UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW GREGORY SPOTTED ELK, | 4:22-CV-04031-LLP |
| Plaintiff, | |
| vs. | 1915A SCREENING |
| DARRIN YOUNG, in his individual capacity; AW BENTENE, in their individual and official capacity; ALEX HANSON, S.I.U., in their individual and official capacity; TROY ELLISE, Restrictive Housing Hearing Board member, in their individual and official capacity; R. VANDEREA, Restrictive Housing Board Member, in their individual and official capacity; D. BIEBER, Restrictive Housing Hearing Board Member, in their individual and official capacity; JEN DRIESKE, in her individual and official capacity; JESSICA COOK, a/k/a Mrs. Cook, Associate Warden Jameson, in her individual and official capacity; JEANNIE BERTCH, a/k/a J. Bertch, Restrictive Housing Manager, Associate Warden Jameson, in her individual and official capacity; ERIC TIMMERMAN, Restrictive Housing Staff Member, in his individual and official capacity; SETH HUGHES, A-Floor Unit Manager, in his individual and official capacity; TROY PONTO, Deputy Warden, in his individual and official capacity; LT. M. JONES, Disciplinary Hearing Officer, in their individual and official capacity; TIFFANY STOYNOV, Unit Coordinator, in her individual and official capacity; UNIT COORDINATOR BUOL, Unit Coordinator, in their individual and official capacity; MIKE LEIDHOLT, Cabinet Secretary South Dakota D.O.C., in his individual capacity; CATHY WYNIA, Special Investigator (SIU), in her individual and official capacity; M. WARD, Case Manager, in their individual and official capacity; UNIT COORDINATOR PECHOUS, A-Floor Unit Coordinator, in their individual | |

| and official capacity; CHAD ROTERT, Associate Warden, in his individual and official capacity; DAN SULLIVAN, in his official capacity; KELLIE WASKO, in her official capacity,<br><br>　　　　　　　Defendants. | |
| --- | --- |

Plaintiff, Andrew Gregory Spotted Elk, an inmate at the South Dakota State Penitentiary ("SDSP"), filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Spotted Elk's motion for leave to proceed in forma pauperis and required Spotted Elk to pay an initial partial filing fee. Doc. 9. Spotted Elk paid his initial partial filing fee on May 26, 2022. This Court now screens Spotted Elk's complaint under 28 U.S.C. § 1915A.

## FACTUAL BACKGROUND

Spotted Elk claims that Dallas Steiner, a fellow inmate, filed a false Prison Rape Elimination Act ("PREA") claim against him on June 4, 2020. Doc. 1 at 7. He claims that he was taken to the Segregated Housing Unit for over 28 days. *Id.* He also claims that he requested that the Department of Criminal Investigation review camera footage of the incident and that a polygraph test be done. *Id.* Spotted Elk alleges that he was questioned about the incident with a polygraph, but the test proctor claimed he could not use names and only referred to Steiner as "that man." *Id.* Spotted Elk alleges that he is a survivor of child molestation committed by a man, and the proctor's repeated use of the phrase "that man" caused him to fail the polygraph because he kept thinking of his past abuser. *Id.* He also alleges that he later learned that it is encouraged for a polygraph proctor to use specific details such as names and times. *Id.*

Spotted Elk alleges that he had a hearing before the Restrictive Housing Hearing Board on July 1, 2020. *Id.* at 8. He alleges that he told the Board members that there were no grounds for him to even be referred to a hearing because he had no write-ups or substantiated PREA

2

claims against him. *Id.* He also alleges that the claim made by Steiner was still being investigated at the time of his hearing. *Id.* Spotted Elk states that the Board members knew he was still being investigated but that they falsified his Restrictive Housing Hearing Findings and Disposition document by marking off the "[a]ssault and related acts" box. *Id.* He states that this was false because he was still being investigated and never was found guilty of that assault. *Id.* The Disciplinary Hearing Officer Findings form attached to the complaint found that the evidence met the criteria for guilt on January 5, 2021. Doc. 1-1 at 65.

Spotted Elk attaches the "Summary of the Board's Findings and Decision[,]" in which the Board stated that "due to the severity of the aligations [sic] the inmate would be better housed in Restrictive Housing." *Id.* at 30. He specifically claims that Alex Hanson, Cathy Wynia, Chad Rotert, Tiffany Stoynov, Jeannie Bertch, Jen Drieske,[1] D. Bieber, Troy Ellise, R. Vanderea, M. Ward, and Jessica Cook are responsible for these actions. *See* Doc. 1 at 9. He alleges that these defendants "discriminated against him and committed wrongful imprisonment, wrongful detention, deliberate indifference, intentional infliction of emotional distress, excessive penalties imposed," and that they "violated proper and nonabusive [sic] conditions of confinement." *Id.* He further alleges "[m]alicious prosecution, administrative malpractice, non-committal policy misconduct, systematic abuse and corruption, malicious abuse of powers, denial of civil rights, false reporting, falsifying documents and inmate endangerment, gross neglect of duties and negligence." *Id.*

---

[1] Spotted Elk brings claims against Jen Drieske, a former deputy warden at SDSP, in her individual and official capacity. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." But Spotted Elk does not identify Drieske's successor, and his official capacity claims against other defendants remain to provide injunctive relief. Thus, Spotted Elk's claims against Drieske in her official capacity are dismissed.

Spotted Elk states that he has been placed "in isolation and in dangerous and overly excessive restrictive conditions" as a result of the false PREA claim. *Id.* He states that he was stabbed in the face, chest, and arm in Restrictive Housing and that he caught COVID-19 there. *Id.* He states that this stabbing exposed him to Hepatitis C and that he is still suffering from COVID-19. *Id.* at 12, 14. He also states that he developed depression, hypertension, and respiratory problems and that he gained 70 pounds. *Id.* at 10. Spotted Elk claims that he is mistreated daily by officers and inmates, called a sex offender, and threatened by inmates because he is in the Restrictive Housing program. *See id.* He claims that he lost parole because he was placed in Restrictive Housing. *Id.* He claims that staff failed to respond when he pressed the call light after being stabbed. *Id.* He also claims that he was sent to the Emergency Room, where he had to be sedated for two days, after he was pepper sprayed by SDSP officials. *See id.*

Spotted Elk alleges that multiple family members, including his fiancé, have left him. *Id.* He alleges that he continues to be harassed by SDSP officials and cites the fact that he was placed in the Segregated Housing Unit for three different investigations in one month as evidence. *Id.* He alleges that two officers taunted him by telling him he would get out of Segregated Housing and then not letting him out. *Id.* He alleges that the girlfriend of one of the officers, a nurse at SDSP, falsified a document to get his pain and mental health medications discontinued. *Id.* He alleges that medical providers and doctors at SDSP now refuse to address his pain issues. *See id.* at 14. He also alleges that he was written up after he reported Steiner for trying to perform oral sex on him. *Id.* at 10.

Spotted Elk claims that an officer refused to feed him, and a sergeant had to come to his floor to tell the other officers that he should be fed. *Id.* at 11. He claims that his chronic back and arm pain have worsened because he cannot move around as freely as general population inmates.

*Id.* He claims that if he were not falsely disciplined and then found non-compliant with the Restrictive Housing program, he would be out of custody by now and able to see outside providers for his back and arm pain. *See id.* He also claims that his suspended prison sentence has been imposed because he has been found non-compliant with the Restrictive Housing program. *Id.* Spotted Elk alleges that he filed grievances regarding his placement and his write-up for the false sexual assault and that these grievances made Darin Young,[2] AW Bentene, Eric Timmerman, Seth Hughes, Unit Coordinator Buol, and Troy Ponto aware of his situation. *Id.* He alleges that he met with these officials and made them aware that he is in Restrictive Housing for a false sexual assault claim. *Id.* He cites his allegation that the Division of Criminal Investigation did not take the evidence to a grand jury as proof that the claim was false. *Id.*

Spotted Elk alleges that Alex Hanson wrote a false report which stated that Spotted Elk said there would be no DNA on Steiner because only oral sex was performed. *Id.* at 11-12. Spotted Elk insists that he never made that statement to the Division of Criminal Investigation and that he never said anything about oral sex. *See* Doc. 1-1 at 64. He alleges that he told Bentene, Young, and Ponto that this was a lie and that they should get the interview tapes from the Division of Criminal Investigation, but they refused to do so. Doc. 1 at 12. He also alleges that Mike Leidholt[3] was aware of this incident because Leidholt signed off on a grievance denial. *Id.*

---

[2] Spotted Elk brings claims against Darin Young, the former South Dakota State Penitentiary Warden, in his individual and official capacity. The current SDSP Warden is Dan Sullivan, who is automatically substituted for Young on the official capacity claims. *See* Fed. R. Civ. P. 25(d).
[3] Spotted Elk brings claims against Mike Leidholt, the former South Dakota Secretary of Corrections, in his individual and official capacity. The current Secretary of Corrections is Kellie Wasko, who is automatically substituted for Leidholt on the official capacity claims. *See* Fed. R. Civ. P. 25(d).

Spotted Elk states that Unit Coordinator Pechous, Timmerman, Bertch, Hughes, and Cook tried to stop him from filing this lawsuit. *Id.* at 13. He states that they refused to process his trust account papers and refused to send out his legal work. *Id.* He further states that they continue to refuse to allow him to send out legal mail. *Id.*

Spotted Elk brings a claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment, alleging that defendants have been deliberately indifferent to the conditions of his confinement. *See id.* at 14. He brings a claim for violation of his Fourteenth Amendment right to due process. *Id.* He also brings a claim for discrimination, although he does not explain the specific constitutional right he believes to be violated or the details of his discrimination claim. *See id.* Spotted Elk does not indicate which claims he brings against which defendants. *See id.* He seeks a preliminary releasing him to a safer and less violent area of SDSP, an injunction requiring the prison to make a public statement that his rights were violated, $10 million in compensatory damages, and $10 million in punitive damages. *Id.*

## LEGAL BACKGROUND

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I.  Official Capacity Claims for Money Damages

Spotted Elk has sued all defendants in their individual and official capacities. Doc. 1 at 2-6. All defendants were employees of the State of South Dakota at the time of the incident in question. *Id.* As the United States Supreme Court has stated, "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

7

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *See id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-243 (2009). Here, Spotted Elk seeks both money damages and injunctive relief. *Id.* at 14. Claims against defendants in their official capacities for money damages are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Spotted Elk's official capacity claims for money damages. Thus, defendants are protected against official capacity claims for money damages, and Spotted Elk's official capacity claims for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

## II. Official Capacity Claims for Injunctive Relief and Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Spotted Elk's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### A. Fourteenth Amendment Procedural Due Process Claims

8

Spotted Elk alleges that defendants violated his Fourteenth Amendment right to due process by disciplining him for a false allegation that he sexually assaulted another inmate and by falsifying evidence against him. *See* Doc. 1 at 7-12. He specifically alleges that Steiner falsely claimed that Spotted Elk sexually assaulted him and that Hanson and other defendants fabricated a statement by Spotted Elk that he had oral sex with Steiner. *See id.* at 7, 11-12. Spotted Elk also alleges that his due process rights were violated when the polygraph test proctor caused him to fail the polygraph by repeatedly referring to Steiner as "that man." *Id.* at 7.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." *Id.* (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be answered if the inmate can establish a constitutionally protected liberty interest. *Id.* (citing *Wilkinson*, 545 U.S. at 221). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (quoting *Wilkinson*, 545 U.S. at 221). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). But "inmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Smith*, 954 F.3d at 1080 (alteration in original) (quoting *Wilkinson*, 545 U.S. at 223).

The Eighth Circuit Court of Appeals has explained that there is no "established 'baseline from which to measure what is atypical and significant in any particular prison system[.]' " *Smith*, 954 F.3d at 1081 (quoting *Wilkinson*, 545 U.S. at 223). But the Eighth Circuit has "affirmatively held what does *not* constitute an atypical or significant deprivation." *Id.* For instance, "a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 1082 (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)). An inmate "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id.* (quoting *Phillips*, 320 F.3d at 847); *see also Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996) (collecting post-*Sandin* cases in which deprivations were upheld as not atypical and significant hardships).

Here, Spotted Elk alleges that he has been placed in Restrictive Housing as a result of his disciplinary charge. Doc. 1 at 8. The record shows that Spotted Elk was sentenced to 15 days of Disciplinary Segregation as a result of this charge and that he received credit for the time he spent in Administrative Detention, resulting in zero additional days in Disciplinary Segregation. Doc. 1-1 at 65. Spotted Elk alleges that he was taken to the Segregated Housing Unit for over 28 days after he was accused of sexual assault. Doc. 1 at 7. He also makes a variety of claims regarding the conditions of Restrictive Housing. *See id.* at 9-12, 14. This Court finds that Spotted Elk's disciplinary conditions likely fit into the category of cases cited by the Eighth Circuit in *Kennedy* as deprivations that were not atypical and significant hardships. *See* 100 F.3d at 642-643. But this determination relies on a comparison of Spotted Elk's conditions post-discipline and the conditions of the SDSP general population, which requires facts not currently before the Court. *See Smith*, 954 F.3d at 1082 (citing *Phillips*, 320 F.3d at 847). Thus, this Court cannot say

with certainty at this early phase of litigation that Spotted Elk's post-discipline conditions are not an atypical and significant hardship, and the Court will assume that Spotted Elk has a liberty interest in avoiding his post-discipline conditions of confinement for purposes of screening.

"[C]laims based on the falsity of the charges . . . , standing alone, do not state constitutional claims." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *see also Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994) ("[T]he filing of a false disciplinary charge is not itself actionable under § 1983[.]"). A prisoner can bring a claim if the necessary procedural protections are not provided or if the disciplinary charge is brought in retaliation for filing a grievance. *See Sprouse*, 870 F.2d at 452. Here, Spotted Elk claims that SDSP officials brought a false disciplinary charge against him, falsified evidence, and improperly administered a polygraph examination, but he makes no allegations of retaliation. *See* Doc. 1 at 7-12. But a false disciplinary charge alone does not state a claim for a procedural due process violation, even when an inmate is ultimately found guilty of and disciplined for the charge. *See Sprouse*, 870 F.2d at 451-52. Spotted Elk can bring a procedural due process claim if he was denied notice, an opportunity to be heard, and a written statement of the evidence relied upon as required by *Holt*. *See* 961 F.2d at 1372 (citing *Wolff*, 418 U.S. 539). A disciplinary decision must also be supported by "some evidence." *See Holt*, 951 F.2d at 1372 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)). Construing his complaint liberally, this Court finds that Spotted Elk brings one Fourteenth Amendment due process claim for insufficiency of notice and a second Fourteenth Amendment due process claim for insufficiency of the evidence.

### 1. Sufficiency of Notice

"It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed. This principle applies within the prison setting." *Williams v. Nix*, 1

11

F.3d 712, 716 (8th Cir. 1993) (citations omitted). The Eighth Circuit has explained that the process due for a prison disciplinary hearing in which a prisoner has a liberty interest is "advance notice of the violation, an opportunity to be heard, and a written statement of the evidence relied on and the reasons for the disciplinary action." *See Holt v. Caspari*, 961 F.2d 1370, 1372 (8th Cir. 1992) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). "The written notice must be adequate to enable the accused prisoner to 'marshal the facts and prepare a defense.' " *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (quoting *Wolff*, 418 U.S. at 564). "To prevent arbitrary deprivations, the notice should spell out 'more than a conclusory charge; an inmate must receive notice of at least some specific facts underlying the accusation.' " *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004)). Prison officials may withhold specific facts "when necessary to protect informants from intimidation and violent reprisals." *Id.* (citing *Wolff*, 418 U.S. at 565-66).

The record shows that Spotted Elk was provided a Restrictive Housing Notice of Initial Hearing on July 1, 2020, and that Spotted Elk waived 24-hour notice of that hearing. Doc. 1-1 at 31, 36. This notice explained that Spotted Elk was accused of assault but did not provide any details or evidence regarding the accusations. *See id.* Instead, the notice merely has a box checked for "Assault and/or Related Act" and describes three subcategories of assault, none of which are circled or otherwise indicated. *Id.* at 31. The "Reason for Hearing" field is left blank, and no specific facts are provided as to the assault. *Id.* at 31, 36. The "Inmate's Rights" section states that Spotted Elk had "the right to know the behaviors/criteria that support[ed his] referral to restricted housing status." *Id.* at 36. The record is unclear as to whether the Referral for Restrictive Housing Hearing document, which contained more detail, was provided to Spotted Elk before his hearing. *See id.* at 27, 32. Spotted Elk does not claim that he was unaware that his

disciplinary charge was related to Steiner's claim that Spotted Elk sexually assaulted him. *See* Doc. 1 at 7. But regardless of Spotted Elk's knowledge of the charge, he was entitled to a written notice adequate for him to "marshal the facts and prepare a defense[,]" and construing his complaint liberally, he alleges that he did not receive adequate notice. *See Dible*, 506 F.3d at 1110 (quoting Wolff, 418 U.S. at 564).

Under *Parrish*, each individual defendant can only be held liable for directly participating in the alleged constitutional violation or for failing to train or supervise an offending actor. 594 F.3d at 1001. Spotted Elk alleges that Hanson, Wynia, Rotert, Stoynov, Bertch, Drieske, Bieber, Ellise, Vanderea, Ward, and Cook are responsible for the alleged violations of his due process rights. Doc. 1 at 9. Thus, Spotted Elk's Fourteenth Amendment due process claims for insufficient notice against all defendants except Hanson, Wynia, Rotert, Stoynov, Bertch, Drieske, Bieber, Ellise, Vanderea, Ward, and Cook are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l). Spotted Elk's Fourteenth Amendment due process claim for insufficient notice against Hanson, Wynia, Rotert, Stoynov, Bertch, Bieber, Ellise, Vanderea, Ward, and Cook in their individual capacities and in their official capacities for injunctive relief and against Drieske in her individual capacity only survives § 1915A screening.

As discussed above, the due process protections regarding adequacy of the notice provided to Spotted Elk only apply if Spotted Elk has a liberty interest in avoiding his post-discipline conditions of confinement. *See Smith*, 954 F.3d at 1079 (citing *Wilkinson*, 545 U.S. at 221). Spotted Elk has a liberty interest in avoiding disciplinary conditions of confinement when he can show "some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *See id.* at 1082 (quoting *Phillips*, 320 F.3d at 847). Only after establishing a liberty interest does the Court turn

to the question of what process is due. *Id.* at 1079 (citing *Williams v. Norris*, 277 F. App'x at 649 (per curiam)); *Wilkinson*, 545 U.S. at 224. Thus, although Spotted Elk's Fourteenth Amendment due process claim for insufficient notice survives screening, he will have to establish both that his post-discipline conditions of confinement constituted an atypical and significant hardship such that he had a liberty interest in avoiding them and that he was not provided adequate notice in order to prevail on this claim.

### 2. Sufficiency of the Evidence

A disciplinary decision must be supported by "some evidence." *See Holt*, 951 F.2d at 1372 (quoting *Hill*, 472 U.S. at 455). "[T]he 'relevant question is whether there is any evidence in the record that *could support* the conclusion reached by the disciplinary board.' " *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986) (quoting *Hill*, 472 U.S. at 455-56 (emphasis added)). But prison officials need not provide all relevant evidence. *See Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir. 1988) (explaining that "prison officials were justified in withholding information about confidential informants because of the risk of revealing their identities"); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (per curiam) (finding that drug test results do not need to be included in the written notice for a drug infraction and that prison officials are not required to provide a copy of drug test results to the inmate (citing *Harrison v. Dahm*, 911 F.2d 37, 41 (8th Cir. 1990))).

Construing his complaint liberally, Spotted Elk claims that his due process rights have been violated because there was not sufficient evidence to support the finding that he sexually assaulted Steiner. *See* Doc. 1 at 7-12. The "Summary of Evidence in Support of [Disciplinary Hearing Officer's] Decision" found within the Disciplinary Hearing Officer Findings states that "[i]nmate Steiner claims that he was raped by Spotted Elk. Inmate Spotted Elk failed the

14

polygraph. This meets the criteria for guilt." Doc. 1-1 at 65. The Disciplinary Hearing Officer

Findings indicates that the decision was based on the disciplinary write-up, video and audio of

the Division of Criminal Investigation interview and the polygraph, and the inmate statement. *Id.*

Spotted Elk claims that Steiner's accusation is false and that he never made a statement

following the polygraph about having oral sex with Steiner. Doc. 1 at 7; Doc. 1-1 at 64. He also

claims that the polygraph was improperly administered. Doc. 1-1 at 64. Spotted Elk argues that

"if [the polygraph] is to be accurate then there has to be DNA in or on the false victim[.]" *Id.* But

SDSP officials are not required to present all possible evidence. *See Freitas*, 837 F.2d at 809;

*Allen*, 5 F.3d at 1153. The polygraph, post-polygraph statement by Spotted Elk, and Steiner's

complaint are evidence in the record that could support the disciplinary board's conclusion, even

if Spotted Elk questions the validity of this evidence. *See Frey*, 807 F.2d at 1414. Thus, Spotted

Elk fails to state a claim for violation of his Fourteenth Amendment due process rights for

insufficiency of the evidence against him. Spotted Elk's Fourteenth Amendment due process

claim for insufficient evidence against all defendants in their individual and official capacities is

dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

## B. Eighth Amendment Conditions of Confinement Claim

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane

ones.' " *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511

U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that

deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis

of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and

internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing,

shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Here, Spotted Elk alleges sufficient facts to state a claim for conditions of confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He alleges that he has been assaulted, exposed to diseases, and threatened by other inmates. Doc. 1 at 9-10, 12, 14. He also alleges that he has developed depression, hypertension, and respiratory problems, that SDSP staff failed to respond after he was stabbed, and that he went to the Emergency Room for two days after being pepper sprayed by SDSP officials. *Id.* at 10. Spotted Elk further alleges that one SDSP officer denied him food and that his chronic back and arm pain have worsened. *Id.* at 11. Although some of these conditions may not rise to the level of a constitutional violation, the cumulative effect of these conditions is sufficient to state a constitutional claim. *See Villanueva*, 659 F.2d at 854.

16

Each individual defendant can only be liable for directly participating in the alleged constitutional violation or for failing to train or supervise an offending actor. *Parrish*, 594 F.3d at 1001. Spotted Elk states that individual SDSP officials, such as the officer that denied him food, participated in the alleged constitutional violation, but he does not name these officials in the facts of his complaint. *See* Doc. 1 at 11. He also makes no claims that specific defendants failed to train or supervise the offending actor or actors. *See id.* at 7-12. Spotted Elk alleges that Young, Bentene, Timmerman, Hughes, Buol, and Ponto "became aware of [his] situation" after he met with them and that these defendants "were well aware that [he] was in Restrictive Housing for a falsified PREA as [the Division of Criminal Investigation] investigated and refuse[d] to take it to the grand jury." *Id.* at 11. But he does not allege that these defendants were aware of, and deliberately indifferent to, the conditions that he alleges violate his Eight Amendment rights. *See id.* Instead, he only alleges that these defendants knew that he had been placed in Restrictive Housing because of a false claim of sexual assault. *See id.*

Similarly, Spotted Elk alleges that Leidholt signed off on a denial of one of his grievances, making Leidholt aware of the constitutional violations. *Id.* at 12. But the attached grievance appeal denial signed by Leidholt only addresses Spotted Elk's PREA case and makes no reference to the conditions of confinement that Spotted Elk alleges are unconstitutional. *See* Doc. 1-1 at 66. Thus, Spotted Elk's Eighth Amendment conditions of confinement claim against all defendants in their individual capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l), and his Eighth Amendment conditions of confinement claim against all defendants in their official capacities for injunctive relief except Young, Drieske, and Leidholt survives § 1915A screening.

**C. Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim**

Construing his complaint liberally, Spotted Elk brings a claim for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See* Doc. 1 at 9-12, 14. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estate of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Here, Spotted Elk claims that his chronic back and arm pain have worsened in Restrictive Housing because he cannot move as freely as he could in the general population. Doc. 1 at 11. Spotted Elk does not allege that this medical need has been diagnosed by a physician as requiring treatment. *See id.* As alleged, Spotted Elk's chronic back and arm pain do not constitute a medical need so obviously serious that even a layperson would easily recognize the need for medical treatment. *See id.* Thus, he fails to allege an objectively serious medical need under *Coleman. See* 114 F.3d at 784 (citation omitted). Spotted Elk's Eighth Amendment deliberate indifference to serious medical needs claim against all defendants in their individual and official capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**D. First Amendment Access to the Courts Claim**

Spotted Elk claims that Pechous, Timmerman, Bertch, Hughes, and Cook tried to stop him from filing this lawsuit. Doc. 1 at 13. Construing his complaint liberally, Spotted Elk brings a claim against these defendants in their individual and official capacities for violating his First Amendment right to access the courts. *See id.* "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)

(quoting *Lewis*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Lewis*, 518 U.S. at 356).

Here, Spotted Elk fails to state a claim for denial of his right to access the courts because he fails to satisfy the actual injury requirement. Spotted Elk alleges that Pechous, Timmerman, Bertch, Hughes, and Cook refused to process his trust account papers, refused to send out his legal work, and continue to refuse to allow him to send out legal mail. Doc. 1 at 13. But he does not allege that a claim has been frustrated or impeded. *See id.* He ultimately was able to file a prisoner trust account report and he does not identify any claims or lawsuits he has been unable to file. *See id.*; Doc. 3. Thus, his First Amendment access to the courts claim against Pechous, Timmerman, Bertch, Hughes, and Cook in their individual and official capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**E. Fourteenth Amendment Equal Protection Claim**

Spotted Elk alleges that defendants have discriminated against him. Doc. 1 at 14. Construing his complaint liberally, Spotted Elk alleges that defendants have violated his Fourteenth Amendment right to equal protection of the laws. *See id.* The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Spotted Elk must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right, and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id.* (citing

20

*Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). An equal protection claim has been recognized through a "class of one" claim, where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Spotted Elk fails to allege that he has been treated differently than a similarly situated class of inmates. Although he mentions discrimination in his complaint, he makes no allegations comparing his treatment to that of other inmates. *See* Doc. 1 at 7-12, 14. He also has not stated a "class of one" claim because he has not shown any intentionally different treatment. *See Village of Willowbrook*, 528 U.S. at 564. Thus, his Fourteenth Amendment equal protection claim against all defendants in their individual and official capacities is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l).

**III. Motion for Appointment of Counsel**

Spotted Elk has filed a motion for appointment of counsel. Doc. 11. He alleges that he was told by SDSP officials on February 1, 2022, that his legal mail had been sent out. *Id.* at 1. He attaches an Administrative Remedy Response in which Sullivan states that there is no record of Spotted Elk sending legal mail on those dates and that he only sent out legal mail on February 7, 2022. Doc. 11-1 at 1. Based on this response, Spotted Elk argues that SDSP is refusing to allow him to send legal mail and that he requires counsel. Doc. 11 at 2.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, the Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. *Id.* At this time, Spotted Elk's claims do not appear to be too

complex, and Spotted Elk is able to investigate the facts and present his claims adequately. The Court remains open to the possibility of appointing counsel if this case proceeds beyond the motion stage. It is one thing to well represent one's position on paper to the court, and it is yet another to be able to adequately try a case to a jury. Thus, this Court denies Spotted Elk's motion to appoint counsel. To the extent that Spotted Elk alleges a violation of his First Amendment right to access the courts in his motion for appointment of counsel, this Court has screened this claim in this order.

Accordingly, it is ORDERED:

1. That Spotted Elk's claims against all defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

2. That Spotted Elk's Fourteenth Amendment procedural due process claim for insufficient notice against Hanson, Wynia, Rotert, Stoynov, Bertch, Bieber, Ellise, Vanderea, Ward, and Cook in their individual capacities and in their official capacities for injunctive relief and against Drieske in her individual capacity only survives § 1915A screening.

3. That Spotted Elk's Eighth Amendment conditions of confinement claim against all defendants in their official capacities for injunctive relief except Young, Drieske, and Leidholt survives § 1915A screening.

4. That all of Spotted Elk's remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Spotted Elk so that he may cause the complaint to be served upon defendants.

6. Spotted Elk shall complete and send the Clerk of Courts a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

7. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1) and this order, upon the defendants.

8. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

9. The clerk of the Court is directed to send a copy of this order to the appropriate official at Spotted Elk's institution.

10. Spotted Elk will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

11. That Spotted Elk's motion for appointment of counsel, Doc. 11, is denied.

DATED November 14 , 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

23